DNA PLANT TECHNOLOGY
CORPORATION,
Plaintiff,

v.

NAVIGATORS INSURANCE
COMPANY, Defendant.

Civil No. 94–4664(CSF).

United States District Court,
D. New Jersey.

Sept. 4, 1996.

Drinker, Biddle & Reath by T. Andrew Culbert and Susan M. Kennedy, Princeton, NJ, for Plaintiff DNA Plant Technology Corporation.

Rosenman & Colin by Franklin F. Bass, Kathleen E. Schaaf, and Andrew L. Klauber, Newark, NJ, for Defendant Navigators Insurance Company.

OPINION

FISHER, District Judge.

This is a declaratory judgment action for insurance coverage under a policy issued by Navigators Insurance Company ("Naviga-

tors") to DNA Plant Technology Corp ("DNAP.") The policy at issue, an "all risk" insurance policy, provided coverage for the period March 23, 1993 to March 23, 1994. Before the court is the question of which party shall bear the burden of establishing where the loss occurred under the policy. For the reasons that follow, I conclude that plaintiff shall bear the burden of establishing the loss occurred within the United States.

The following facts are undisputed. DNAP, founded in 1981, is a small biotechnology company that develops premium fruits and vegetables. Product lines include celery, carrots, cherry tomatoes and peppers. These products are marketed through a subsidiary which sells the produce to wholesale and retail markets. In 1986, DNAP began to develop a line of full-size tomatoes. According to DNAP, from 1986 to 1992, DNAP invested approximately $7 million to develop a superior hybrid tomato seed for full scale commercialization. The seed chosen for commercialization was designated hybrid seed 91389 ("389").

In 1992, DNAP contracted with Asgrow Seed Company in Thailand for the production in Thailand of the hybrid seek necessary to support DNAP's commercial production plans. In April 1993 Asgrow harvested DNAP's tomato seed and arranged for shipment from Asgrow's facility in Thailand to Asgrow's facility in Gonzalez, California. The seeks were shipped as part of an Asgrow shipment of 173 boxes. Shipment occurred via United Airlines from Thailand to Japan and then to San Francisco. Initially, the entire shipment was placed on United Flight 844 in Thailand. Flight 844 proceeded to Taipei, Japan where it landed and a portion of the cargo was placed on board United Flight 828. Flight 844 then proceeded directly to San Francisco. Flight 828 proceeded to San Francisco via Tokyo, Japan.

Of the 173 boxes, 2 boxes were the property of DNAP. The remaining boxes in the shipment were the property of Asgrow. Of the two boxes, one contained approximately twenty pounds of the 389 seed. This box represented DNAP's seed crop for the 1993–1994 premium tomato harvest and is the subject of this suit.

In late April 1993, DNAP was notified by Asgrow that the box containing the specially developed hybrid tomato seek was missing. DNAP claims the loss of seeds resulted in a significant loss as a result of DNAP's inability to supply customers with the hybrid tomato. DNAP seeks both damages for loss of the seeds and business interruption loss under the policy.

The final pretrial issue to be resolved involves the burden of proof. In the November 28, 1995, opinion of this court, I held that coverage for property loss and business interruption loss would be provided under the policy so long as the seeds were lost within the United States. In reaching this determination I noted that under New York law, the party seeking coverage bears the burden of bringing its claim within the basis terms of the insurance policy. The burden then shifts to the insurer to establish the claim is governed by a policy exclusion.

On June 4, 1996, I instructed the parties to brief the issue of which party would bear the burden of establishing the location of the loss of seeds at trial. The relevant policy provisions are set forth in ¶¶ 9–11. Paragraph nine sets forth the territorial limits of the policy. Paragraph ten sets forth the scope of coverage and paragraph eleven sets forth that all risks are covered unless otherwise excluded.

9. TERRITORY

This policy covers within the 50 states compromising the United States of America, the District of Columbia, Puerto Rico, the Virgin Islands, and Canada

10. COVERAGE

Except as hereinafter excluded, the policy covers:

a. Real and Personal Property

1) The interest of the Insured in all real and personal property ... owned, used, or intended for use by the Insured ...

b. Business Interruption

1) Loss resulting from the necessary interruption of business conducted by the Insured and caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to

real or personal property as described in Clause 10a

11. PERILS INSURED AGAINST

This policy insures against all risk of physical loss of or damage to property described herein including general average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

Def. Ex. 1.

Both parties agree that paragraph eleven sets forth the "all risk" language and that under an "all risk" insurance policy, the burden of establishing how a loss occurred and that the loss is excluded from coverage falls on the insurer. *Beth Abraham Hosp. v. Bowen,* 684 F.Supp. 367 (S.D.N.Y.1988). The parties, however, debate the application of this rule. Plaintiff suggests that the effect of an "all risk" insurance policy such as the instant one shifts the burden of proving the "where" or "how" of a loss to the insurer. The defendant on the other hand suggests that an "all risk" policy only shifts the burden of proving "how" a loss occurs to the insurer, but in the instant case, "how" the loss occurred is not relevant. I agree.

The conclusion I reach is that while an "all risk" insurance policy shifts the burden of establishing that an excluded peril caused the loss, the territorial limitation of the policy is neither a risk nor a peril. The only case this court is aware on this precise issue holds to the contrary. *B & S Associates, Inc. v. Indemnity Casualty and Property, Ltd.,* 641 So.2d 436 (Dist.Ct.App.Fla.1994). In *B & S,* the District Court of Appeal of Florida held it was error for a trial court to impose the burden of establishing whether an accident occurred within fifty miles of the United States on the plaintiff under an all risk insurance policy. That case, which provides no citations, is neither binding nor persuasive. I decline to follow it.

The case I do find persuasive is *Banco Nacional v. Argonaut Insurance Co.,* 681 F.2d 1337, 1340 (11th Cir.1982). In *Banco Nacional,* the plaintiff suffered a property loss resulting from damage to bags of urea shipped under a warehouse to warehouse policy. The policy written by the defendant covered "all risk" of physical harm to the cargo subject to certain exclusions. In a suit for coverage, the district court imposed the burden on the insured of establishing that the urea was damaged while the policy was in force. On appeal, the Eleventh Circuit affirmed. In affirming, the Eleventh Circuit held:

In the instant case, there was significant dispute at trial regarding whether a loss had in fact occurred and whether any actual loss had occurred within the policy period. Banco Nacional, in effect, argues that all it need show as part of its prima facie case is that it lost urea at some unspecified time, not necessarily during the voyage or discharge. Proof that the loss occurred outside the policy period would be an exception to coverage under Banco Nacional's theory, and thus the burden under *Morrison [Grain Company v. Utica Mutual Insurance Company,* 632 F.2d 424 (5th Cir.1980) ] would be on Argonaut.

We reject this argument. The plaintiff in a suit under an all-risks insurance policy must show a relevant loss in order to invoke the policy; and proof that the loss occurred within the policy period is part and parcel of that showing of a loss. Rather than being an exception to coverage, as an inherent vice or defect would be, proof that a loss occurred within the policy period is a predicate to the application of the policy.

*Id.* at 1340.

In the instant case, the issue of whether the loss of seeds occurred within the United States is similar. Because the seeds were shipped from outside the territorial limits of the policy to within the territorial limits of the policy, imposing on plaintiff the burden of establishing a loss where the policy was in effect is appropriate. This is similar to imposing on a plaintiff a burden of establishing that a loss occurred while a policy was in effect.

Plaintiff shall therefore bear the burden of proof at trial of establishing that the seeds arrived in the United States and were lost after arrival. This burden of establishing that the seeds were lost after arriving in the United States is a prerequisite to recovering

both property losses and business interruption losses. The exact location of the loss is not relevant, nor is the cause, however, plaintiff must establish that the seeds arrived in the United States. Plaintiff may establish the arrival of the seeds in the United States by presenting evidence of custom receipts, the air waybill and the bill of lading. Additionally, plaintiff may present testimony from individuals familiar with the means and manner of shipment involved in the instant case. From these facts, the jury may infer that the seeds arrived in the United States.

Additionally, defendant seeks to relitigate issues addressed in an opinion of Magistrate Judge John J. Hughes. Those matters are governed by the law of the case doctrine which directs that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages of the litigation. *Harrington v. Lauer*, 893 F.Supp. 352 (D.N.J.1995). Defendant elected not to appeal the opinion of Magistrate Judge Hughes and no authority has been provided to the court why it should disregard that opinion. Those matter will not be revisited. Additionally, because this court has interpreted the policy, defendants will not present testimony on policy interpretation. Defendants request for sanctions or summary judgment is denied. Trial shall proceed on the issue of liability and damages.